A09A0687. ANTHONY et al. v. GATOR COCHRAN
CONSTRUCTION, INC.
(682 SE2d 140)

DOYLE, Judge.

Following a jury trial in an action on an account and for fraud, Ray G. Anthony, Anthony Family Limited Partnership, Aqua Toy Store, Inc., Anthony Trucking, L.P, Anthony Aviation Center, Inc., and Anthony Holdings International, L.L.C. (collectively "Anthony Entities") appeal from a judgment in favor of Gator Cochran Construction, Inc. ("Cochran Construction"). Specifically, the Anthony Entities contend that the trial court erred (1) by denying their motion for judgment notwithstanding the verdict (j.n.o.v.), or in the alternative, for a new trial, and (2) by denying their motion for new trial due to an inconsistent verdict. Because some evidence supported the verdict, and because the Anthony Entities failed to object to the allegedly inconsistent verdict, we affirm.

Construed in favor of the verdict,[1] the evidence shows that, with investment from Ray Anthony, Martin Cochran started Cochran Construction, a construction and fabrication company. Cochran was the sole owner of the company, which did work at cost for several of

---

[1] See *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431 (587 SE2d 876) (2003).

Anthony's own companies in return for the investment. As Cochran Construction continued to perform work at cost for the Anthony Entities, the Anthony Entities failed to pay certain invoices. Over time, the Anthony Entities' outstanding account totaled $606,747.96.

Cochran Construction filed suit against the Anthony Entities, seeking reimbursement for the unpaid invoices. Following a trial and the denial of the Anthony Entities' motion for a directed verdict, a jury awarded damages of $606,747.96 in favor of Cochran Construction to be paid jointly or severally by the Anthony Entities. The jury also awarded certain Anthony Entities $141,422.46 in their counterclaim for a separate debt owed by Cochran Construction. The Anthony Entities moved for j.n.o.v., or in the alternative, a new trial, which motion was denied, giving rise to this appeal.

1. The Anthony Entities contend that the trial court erred in denying them a new trial or j.n.o.v. because the evidence did not support the jury's disregard for the Anthony Entities' corporate form and entering judgment against all of them jointly and severally. We disagree.

> On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict. In considering a motion for a j.n.o.v., we review the evidence in the light most favorable to the party who won and who opposed the motion. If any evidence supports the verdict, we will affirm the trial court's denial of the motion.[2]

Thus the issue turns on whether Cochran presented some evidence warranting the disregard for the separateness of the Anthony Entities, including Anthony himself.

> In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity

---

[2] (Citations and punctuation omitted.) *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (2) (612 SE2d 17) (2005).

of interest and ownership that the separate personalities of the corporation and the owners no longer exist. The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud *or to evade contractual or tort responsibility*.[3]

Evidence supporting piercing the corporate veil includes "commingling [of funds] on an interchangeable or joint basis or confusing the otherwise separate properties, records[,] or control."[4]

Here, the trial evidence included testimony from Cochran's accountant that Anthony personally, and the Anthony Entities companies separately, "entwined" their finances and dealings with Cochran. For example, there was testimony that various Anthony Entities would request Cochran to do work that would be paid for by another entity. There was evidence that invoices sent to one Anthony Entity were paid by another, and Cochran never received any complaints about mistaken billing or billing the wrong entity. Ray Anthony testified that he personally made the decisions about whether invoices would be paid, and, when he was asked why the invoices were not paid, he explained, "Because I pay myself. Maybe I didn't want to pay at that time. Maybe I had to put it on some another [sic] company. Maybe I needed it somewhere else. I mean why do I have to take it out of this pocket and put it in that pocket?"[5] There was further documentary and testimonial evidence that the various Anthony Entities had amassed unpaid accounts of $606,747.96 — the amount awarded by the jury — based on direction from Ray Anthony or his agents. If there is some evidence to support the verdict, a j.n.o.v. is improper "and an appellate court must view the evidence in the light most favorable to the party who secured the jury verdict."[6] Therefore, in light of the evidence supporting the jury's verdict, the trial court did not err in denying the Anthony Entities' motion.

2. The Anthony Entities also contend that the trial court erred by failing to grant a new trial in light of the allegedly inconsistent jury verdict, which awarded damages jointly against certain entities owned by Anthony and not others. However, "[t]he potential for an

---

[3] (Citations and punctuation omitted; emphasis supplied.) *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-290 (1) (612 SE2d 296) (2005).

[4] (Punctuation omitted.) *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. 459, 460 (1) (462 SE2d 406) (1995).

[5] Anthony's defense apparently was based on the erroneous belief that he owned Cochran Construction.

[6] *Pendley v. Pendley*, 251 Ga. 30, 31 (1) (302 SE2d 554) (1983).

inconsistent verdict, if any, was evident on the face of the form of the jury verdict," which allowed the jury to fill in blanks with each separate defendant found liable, if any.[7] "Therefore, [the Anthony Entities] waived [their] right to raise inconsistency as error by failing to make a proper objection to the form of the verdict."[8] To the extent that the alleged error was substantive, because

> the jury dispersed before clarifying this substantive issue, the trial court lost authority to correct or otherwise amend the seemingly inconsistent verdict. A new trial was not required, however, because the [Anthony Entities] had waived any challenge to the verdict by its failure to object. Upon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to object.[9]

Accordingly, this enumeration presents us with nothing to review. *Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 23, 2009 —
RECONSIDERATION DENIED JULY 15, 2009

*Johnston, Wilkin & Williams, William J. Williams*, for appellants.
*Jay M. Sawilowsky*, for appellee.

---

[7] *Brannan Auto Parts v. Raymark Indus.*, 183 Ga. App. 82, 83 (1) (357 SE2d 807) (1987).

[8] Id. See also *Griffin v. Associated Payphone*, 244 Ga. App. 183, 186 (2) (a) (534 SE2d 540) (2000).

[9] (Citations and punctuation omitted.) *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 133 (5) (b) (483 SE2d 121) (1997).